## WILSON *v.* EXCHANGE BANK.

1. In an action against the maker and indorser of a promissory note, joined in the same suit, the indorser may set off an individual claim against the plaintiff, growing out of the transaction which gave rise to the execution of the note. *Threlkeld* v. *Dobbins*, 45 *Ga.* 144, distinguished.
2. After a valid plea of set-off has been filed, the plaintiff is not entitled to dismiss his action so as to interfere with the rights of the defendant, except upon sufficient cause shown.

Argued February 4, — Decided March 25, 1905.

Complaint. Before Judge Calhoun. City court of Atlanta. May 9, 1904.

*Frank A. Arnold,* for plaintiff in error.
*Rosser & Brandon,* contra.

CANDLER, J. The Exchange Bank brought suit against Frank Williams as maker, and May C. Wilson as indorser, on a number of promissory notes. The petition alleged that the notes were made by Williams to the J. C. Wilson Coal and Lumber Company, under which name May C. Wilson was at the time doing business, and were indorsed by May C. Wilson. The defendants filed a plea in which they denied that at the time the notes were executed May C. Wilson was doing business under the name of the J. C. Wilson Coal and Lumber Company, and averred that that company was a corporation under the laws of Georgia. They also denied indebtedness on the notes, and averred that "plaintiff has received from defendant May C. Wilson $874.00 on account of the transaction sued upon, and said plaintiff is indebted to

defendant May C. Wilson the difference, $474.00, which she pleads in recoupment [and] asks judgment against plaintiff for said sum." Subsequently Mrs. Wilson offered an amendment to her plea, which the court, on objection of counsel for the plaintiff, disallowed. The court also, on oral motion, struck the plea of set-off, and later passed another order, "without the knowledge or consent of defendant May C. Wilson," permitting the plaintiff to dismiss the case at its cost. Mrs. Wilson excepts to the refusal of her amendment, the order striking her plea, and the order allowing the plaintiff to dismiss.

1. As no reference is made, in the brief of counsel for the plaintiff in error, to the refusal of the amendment offered by Mrs. Wilson, the assignment of error on this ruling will be treated as having been abandoned, and we will pass to the controlling question in the case, viz., whether, in a suit on a promissory note, where both maker and indorser are joined in the suit, the indorser may set off an individual demand against the plaintiff's cause of action. This question is not without considerable difficulty. In the case of *Threlkeld* v. *Dobbins*, 45 *Ga.* 144, it was held broadly that "a debt due by the plaintiff to one of several defendants in a suit can not be pleaded by the defendants as a set-off, unless there be some special cause shown." That case, however, was decided by only two judges, and hence is not binding upon us as authority; but aside from that consideration, an examination of the facts upon which it was based will show that the headnote, from which the foregoing quotation was taken, is much broader than the actual question decided. It appeared that Threlkeld and another had executed to Dobbins their joint promissory note; that Dobbins owed Threlkeld a sum of money for cotton which he had sold for him, and for which he had not accounted; and that Dobbins had agreed that this sum should be entered as a credit on the joint note. It was held that this agreement was "such special claim" as could be set off against the plaintiff's demand on the note. The cases cited by counsel for the defendant in error as being in harmony with the decision in *Threlkeld* v. *Dobbins* are also cases where a joint demand was the subject of the suit and one of the defendants sought to set off an individual claim. With one exception they were suits against partnerships, the exception being a suit against joint makers of a

promissory note. It seems to be well settled in Georgia, as in most of the States, that, in a suit against two or more persons on a joint obligation, set-off is not available to less than the entire number of defendants. The reason of this rule is plain. A joint obligation is indivisible; each one of the obligors is bound to the same extent and in the same manner as all the others; a separate judgment against less than the entire number would be impossible; and in this very fact of indivisibility lies the security to the obligee of accepting a joint obligation. That, however, is not this case. The maker and the indorser of a negotiable promissory note are severally, not jointly, bound by the instrument. Their contracts are essentially different. That of the maker is to pay the note when due, according to the terms of the writing. That of the indorser is that he will pay only on certain well-defined conditions precedent. Owing to the several nature of the contract, a suit against the maker and indorser in one action was not known to the law merchant; and it was necessary to obtain a judgment against the maker before the liability of the indorser was established. The suit against maker and indorser in one action is entirely of statutory origin (14 Enc. Pl. & Pr. 452, and authorities cited in note); and the Georgia statute on the subject was not enacted until 1826. *Beckwith* v. *Carleton,* 14 *Ga.* 693. And see generally, on this subject, *Vinson* v. *Platt,* 21 *Ga.* 135; *Lamar* v. *Cottle,* 27 *Ga.* 265; *Davis* v. *Bank,* 31 *Ga.* 69; *Ware* v. *Bank,* 59 *Ga.* 844.

The defense of set-off was also unknown to the common law, because " the primitive notion of an action did not admit the possibility of a defendant being an actor and interposing a claim against the plaintiff to be tried in the one suit." Pomeroy's Code Remedies (3d ed.), § 729; Waterman on Set-off (2d ed.), § 10. By the statute of 2 Geo. II, c. 27, § 13, it was enacted that " where there are mutual debts between the plaintiff and defendant, . . . one debt may be set off against the other, " etc. The different States of this country have all passed statutes the practical effect of which is the same as that of the English statute, though varying somewhat in phraseology. In Georgia, it is provided that " between the parties themselves any mutual demands, existing at the time of the commencement of the suit, may be set off; " and that " set-off must be between the same parties and in their own right."

Civil Code, §§ 3746, 3747. The exact meaning to be given to the expressions "mutual demands" and "same parties," as used in the statute, is the important question now to be decided. It seems to us nothing more than reasonable to hold that in a case like the present, where two or more defendants are joined in an action to which they are severally liable, and in which a separate judgment may be taken against them, a cross-demand in favor of any one of the defendants against the plaintiff would come within a fair construction of the requirement of mutuality; nor can we see the necessity, in such a case, of construing the words "same parties" to mean "all the parties." We are aware that this view is in conflict with the English rule on the subject, and with the decisions of many of the courts of last resort of this country; but it is also in harmony with many American authorities of eminent respectability. In Pomeroy's Code Remedies (3d ed.), § 755, the author says: "The provision found in nearly all the codes, that the counter-claim must exist 'in favor of a defendant and against a plaintiff' between whom a several judgment might be had in the action,' implies that whenever the single defendant or all the defendants jointly may recover against one or some of the plaintiffs and not against all, or whenever one or some of the defendants and not all may recover against the single plaintiff or all the plaintiffs jointly, or whenever both of these possibilities are combined, a counter-claim may be interposed against the one or some of the plaintiffs and not against all, and by the one or some of the defendants and not by all. Such a severance in the recovery is possible when the right sought to be maintained on the one side, and the liability to be enforced on the other, are not originally joint." After a full discussion of numerous cases bearing on the subject, the author lays down the following rules (§ 761): "First, when the defendants in an action are joint contractors, and are sued as such, no counter-claim can be made available which consists of a demand in favor of one or some of them. Secondly, when the defendants in an action are jointly and severally liable, although sued jointly, a counter-claim, consisting of a demand in favor of one or some of them, may, if otherwise without objection, be interposed. Thirdly, since it is possible, pursuant to express provisions of all the codes, for persons severally liable to be sued jointly under certain circumstances in a legal action—that is, in

an action brought to recover a common money judgment—a counter-claim in favor of one or more of such defendants may be pleaded and proved. . . " In Roberts v. Donovan, 70 Cal. 108, it was held that one of two joint obligors could not set off an individual claim against the plaintiff's demand on the action; but in the opinion (p. 114) the following language was used : " The action was brought upon the joint bond of all the defendants. Were it a joint and several bond, no difficulty would arise ; for where the cause of action is several as well as joint, a several judgment may be entered without reference to the mere form of the action." In some of the States it is held flatly that the defense of set-off is not available to less than the entire number of defendants. See Lemon v. Stevenson, 36 Ill. 49 ; Ryan v. Barger, 16 Ill. 28 ; Woods v. Harris, 5 Blackf. (Ind.) 585 ; Gordon v. Swift, 46 Ind. 208 ; Warren v. Wells, 1 Metc. (Mass.) 80; Brooks v. Stackpole, 168 Mass. 537 ; Jones v. Gilreath, 6 Ired. L. (N. C.) 338; Corbett v. Hughes, 75 Ia. 282 ; Banks v. Pike, 3 Me. 268.

In Trammell v. Harrell, 4 Ark. 602, the Supreme Court of Arkansas, by a divided bench, held: "A defendant or defendants can not set off a claim due to him or them by only one or a part of several plaintiffs; nor can one defendant, of several, set off a claim due to him alone, from the plaintiff or plaintiffs ; and whether the claim sued on, or that attempted to be set off, or both, are joint, or joint and several, makes no difference." Chief Justice Ringo, in a strong opinion, dissented from the judgment rendered; and so pertinent are the views expressed by him in the dissenting opinion to the point now under discussion that we quote therefrom as follows: " It is well understood that no set-off was allowed by the common law; and that the whole right of set-off, in actions at law, had its origin in certain statutes of England, the first of which gave it only in respect to a single class of demands; but it has been considerably enlarged and extended by subsequent acts of Parliament, so as to embrace generally all liquidated damages or demands upon which an action of debt or indebitatus assumpsit would lie, but only where the demand to be set off is due in the same right, from all of the plaintiffs to all of the defendants. And this I understand to be one of the most prominent and distinct features in all of the acts of Parliament upon the subject, and it is one which appears to have been intro-

duced into the statutes of set-off of a majority of the States of the United States, and in such States there can be no doubt that a demand not due from all of the plaintiffs to all of the defendants can not be admitted as a set-off, because it is not within the provisions of law allowing such defense to be made. . . The first section of our statutes of set-off, Rev. St. Ark. 729, ch. 139, declares that 'if two or more persons are mutually indebted to each other, one debt may be set off against the other, although such debts may be of a different nature.' . . The language here quoted, it will be perceived, does not in any way make the right of set-off to depend upon the number of the defendants, . . but makes it depend solely upon the existence of a mutual indebtedness between one or more of the persons suing and one or more of the persons sued. To illustrate my view of the statute, suppose A, B, and C indebted to E in $1,000, and E, at the same time, indebted to A in the like sum of $1,000. A sues E for the debt: can E set off the debt due to him from A, B, and C? Certainly. Why? Because there exists between him and the plaintiff a mutual indebtedness. Each owes the other a debt, and the law having made the debt of A, B, and C several as well as joint, E has an election to treat it as the individual debt of A; and so regarding it, there is certainly, in the most strict understanding of the term, a mutuality of indebtedness between the parties A and E. But suppose the suit brought by E against A, B, and C, would not the same mutuality of indebtedness exist between A and E? I answer that it would; and that, according to the letter as well as the spirit of the statute, A would have a legal right to set off the debt due to him from E." Attention is directed to the similarity of the Arkansas statute under discussion by the learned Chief Justice and our own, and to the fact that in both the requirement of the law is that the demands shall be mutual. And in the subsequent case of Leach *v.* Lambeth, 14 Ark. 668, the principle laid down by the majority in Trammell *v.* Harrell was overruled, and by a unanimous decision the views expressed by the Chief Justice in his dissenting opinion in that case were adopted as the law applicable to the subject under discussion. See also Burke's administrator *v.* Stillwell, 23 Ark. 294. And for decisions of other States to a like effect, see Pitcher *v.* Patrick's administrators, Minor (Ala.), 321; Carson *v.* Barnes, 1 Ala. 93;

Sledge v. Swift, 53 Ala. 110; Huddleston v. Askey, 56 Ala. 218; Riley v. Stallworth, Id. 481; Locke v. Locke, 57 Ala. 475; Childerson v. Hammon, 9 S. & R. (Penn.) 68; Robinson v. Beall, 3 Yeates (Penn.), 267; Miller v. Kreiter, 76 Penn. St. 78; Dunn v. West, 5 B. Mon. 377.

In Locke v. Locke, 57 Ala. 475, the following language is used: " If, as the verdict tends to show, the set-off was due to only one of the defendants, this would constitute a good defense to plaintiff's action, but would not authorize a recovery for the excess, for the reason that such recovery would require a change, to that extent, of the parties to the judgment.    In fact, it would, in effect, require two judgments; one in favor of one defendant, for the certified balance, and the other in favor of all the defendants, for the costs of the suit.    This can not be done in legal proceedings." Under the liberal provisions of our law as to judgments in legal proceedings, the objection urged by the Alabama court to a judgment for one of the defendants for the excess of his set-off would not apply.    Once the facts are definitely ascertained, a judgment to fit those facts can easily be framed.    And to the possible objection that the allowance of individual set-offs of one or more defendants would give rise to difficulty in the framing of a judgment to fit the facts, it may be replied that the difficulty is one more of arithmetic than of law.    Say that A is plaintiff in an action on a promissory note for $100, executed by B and indorsed respectively by C, D, and E.    A owes C $100, D $200, and E $300.    Each of the defendants answers, separately or jointly as the case may be, setting off his individual demand against the plaintiff, and the verdict of the jury is in favor of their contentions.    The cross-demand of only one of the defendants could be applied to the extinguishment of the note sued on, for the application of a set-off is in the nature of a payment, and of course the original claim could only be legally paid once.    But the other defendants, having been haled into court, and having, under the law, set up their counter-claim, would have the right to stay in court until their rights were adjudicated.    And so judgment might be entered generally in favor of the defendant C, thus releasing the maker of the note, B, and the other indorsers, D and E, and in favor of D and E against the plaintiff respectively for $200 and $300.    In *Threlkeld* v. *Dobbins*, supra, relied

on as authority by counsel for the defendant in error, Judge Mc-
Cay said : "Independently of the settled rule, under the English
statutes of set-off, our code provides that set-off must be between
the same parties, and in their own right.    Code, section 2850.
This section of the code, however, recognizes some special excep-
tions.    Two are mentioned, to wit, the case of a surviving part-
ner, and a debt due to the principal in a suit against the prin-
cipal and security."    Tracing back the latter of the two so-called
exceptions to its origin, we have reached the conclusion that in-
stead of being an exception to the rule, it is within the rule rec-
ognized in Georgia from the beginning in regard to the law of
set-off.    The original act allowing set-off under the law of Geor-
gia was passed in 1799, being part of the judiciary act.    Prince's
Dig. 425.    It contained no reference whatever to suits against
principal and security.    The provision of the code referred to by
Judge McCay, which is now a part of the Civil Code, § 3747,
made its appearance for the first time in the Code of 1863,
§ 2842, and was evidently codified from the decision of this
court in the early case of *Harrison* v. *Henderson,* 4 *Ga.* 198.
It was there held that in an action against principal and surety
the principal might set off his individual demand against the
plaintiff.    In the opinion (p. 199) Judge Warner, after discuss-
ing the act of 1799, authorizing the plea of set-off, and quoting
therefrom, said :    "The objection urged against the set-off is that
the demand of the plaintiff is a joint demand, and the debt
offered to be set-off is the separate demand of Harrison against
the plaintiff.    It is true, as a general rule, that a separate demand
can not be set off against a joint demand ; but the plaintiff's de-
mand here is several as well as joint.    We must look to the orig-
inal character of the contract ; for the plaintiff, by pursuing his
remedy against them as joint contractors does not alter the orig-
inal character of the contract itself.    When we look at the con-
tract, we see it is the separate contract of Harrison with the
plaintiff, secured by the joint security of Sims."    It will thus be
seen that under the statute of set-off as originally enacted, which
has not been amended in this respect, it was recognized that in a
suit on a several obligation the defense was available to any one
or more of the defendants ; and the subsequent codification of this
decision certainly did not operate to alter its effect.  · It will thus

be seen that it is quite erroneous to argue that, because the codifiers have named two specific instances in which one or more of several codefendants may plead set-off, the plea can not be interposed in any other case where more than one defendant is sued in the same action.

We have discussed this question at length, not only because of the apparent doubt cast upon it by the decision in the case of *Threlkeld* v. *Dobbins*, but also on account of its far-reaching importance to the commercial world.    Applying what has been said to the facts of this case, our conclusion is, that, the contract of Williams and that of Mrs. Wilson being several, it was competent for the latter to set off her individual claim against that of the plaintiff.

2. The defendant May C. Wilson having filed a valid plea of set-off, the plaintiff could not, without making some sort of showing, dismiss its action so as to prejudice her right to a hearing on the claim set up in her plea.    Civil Code, §§ 3754, 4970 ; *Simon* v. *Myers*, 68 *Ga.* 76.

*Judgment reversed.*  *All  the Justices concur.*